EXHIBIT A

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED AIRLINES, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.** |
| | ) | |
| **BRAINWAY AIRLINESERVICES GES.M.B.H.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## NOTICE OF REMOVAL

Defendant Brainway Airlineservices GES.M.B.H ("Brainway") hereby gives notice of the removal to this Court of the case styled *United Airlines Inc. v. Brainway Airlineservices GES.M.B.H.*, Case No. 2023CH06390, from the Circuit Court of Cook County, Illinois, Chancery Division, pursuant to 28 U.S.C. § 1441, *et seq.*, based upon the following grounds:

1.      On May 16, 2023, 5455 United Airlines, Inc. ("United") filed a complaint against Brainway in the Circuit Court of Cook County, Illinois, Chancery Division.

2.      Copies of the pleadings filed in this action are attached hereto as Exhibit 1, as required under 28 U.S.C. § 1446(a). (Compl., Ex. 1).

3.      Brainway was served with a copy of the Complaint on May 19, 2023.

4.      This Notice of Removal is filed within 30 days of the effective date of service, and, therefore, removal of this action is timely under 28 U.S.C. § 1446(b).

5.      This action is properly removed to this Court under 28 U.S.C. § 1441 because this district/division embraces the place where the complaint is pending.

6. Removal of this action is appropriate under 28 U.S.C. § 1441(a) because the Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a) since the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest.

7. Brainway is a citizen of Austria under 28 U.S.C. § 1332(c)(1) which is incorporated by, and maintains its principal place of business in, Vienna, Austria. (Compl., Ex.1 at ¶ 2.)

8. United is a citizen of Illinois under 28 U.S.C. § 1332(c)(1) because it maintains its principal place of business in, Cook County, Illinois. (Compl., Ex.1 at ¶ 1.)

9. The complaint alleges that United seeks a Declaratory Judgment as to its liability under a contract between the Parties and acknowledges that Brainway claims it is owed over €3,077,525.93 under the agreement as such the case in controversy exceeds the jurisdictional threshold of $75,000. (Compl., Ex. 1 at ¶ 14.)

10. Brainway is the only Defendant named in this action, so the requirement that all defendants consent to removal does not apply. *See* 28 U.S.C. § 1446(b).

11. Pursuant to 28 U.S.C. § 1446(d), Brainway will promptly file a copy of this notice of removal with the District Court for the Circuit Court for Cook County, Illinois, Chancery Division, and serve it on counsel for United.

Dated this 15th day of June, 2023.      Respectfully submitted,

/s/ Dylan P. Grady
Dylan P. Grady, ARDC #6309120
**BROWN HAY & STEPHENS**
205 S. 5th Street, Suite 1000
P.O. Box 2459
Springfield, IL 62701
Tel: (217) 544-8491
dgrady@bhslaw.com

and

2

Daniel A. Glass (application for admission pending)
**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
1717 Pennsylvania Avenue, N.W., Suite 1200
Washington, D.C. 20006
Tel:     (202) 659-6651
Email: dglass@eckertseamans.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2023, I caused a copy of the foregoing **Notice of Removal**

to be served via U.S. Mail, postage prepaid, upon the following counsel of record:

        Richard J. Leamy Jr.
        Lindsay Omolecki
        Weidner & McAuliffe, Ltd.
        1 North Franklin, Suite 1900
        Chicago, IL 60603
        rjleamy@wmlaw.com
        lcomolecki@wmlaw.com

        *Counsel for Plaintiff*

                              /s/ Candace Alexander

Hearing Date: No hearing scheduled
Location: <<CourtRoomNumber>>
Judge: Calendar, 12

<u>EXHIBIT 1</u>

FILED
5/16/2023 1:02 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH03690
Calendar, 12
22739059

FILED DATE: 5/16/2023 1:02 PM   2023CH03690

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| Summons - Alias Summons | (08/01/18) CCG 0001 A |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

UNITED AIRLINES, INC.

(Name all parties)   Case No.   2023CH03690

v.

BRAINWAY AIRLINESERVICES GES.M.B.H.,

### SUMMONS      ALIAS SUMMONS

To each Defendant: Brainway Airlineservices GES.M.B.H
VIE-International Cargo Center, Gate 3, Flat 225, A-1300 Wien, Austria

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance and pay the required fee **within thirty (30) days after service of this Summons**, not counting the day of service. To file your answer or appearance you need access to the internet. Please visit www.cookcountyclerkofcourt.org to initiate this process. Kiosks with internet access are available at all Clerk's Office locations. Please refer to the last page of this document for location information.

**If you fail to do so, a judgment by default may be entered against you for the relief requested in the complaint.**

To the Officer:

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than thirty (30) days after its date.

**Dorothy Brown, Clerk of the Circuit Court of Cook County, Illinois**
cookcountyclerkofcourt.org
Page 1 of 3



Summons - Alias Summons                                  (08/01/18) CCG 0001 B

E-filing is now mandatory for documents in civil cases with limited exemptions. To e-file, you must first
create an account with an e-filing service provider. Visit http://efile.illinoiscourts.gov/service-providers.htm
to learn more and to select a service provider. If you need additional help or have trouble e-filing, visit http://
www.illinoiscourts.gov/FAQ/gethelp.asp, or talk with your local circuit clerk's office.

Atty. No.: 10524                         Witness: _____

Atty Name: Richard J. Leamy, Jr.-Wiedner & McAuliffe, Ltd    5/16/2023 1:02 PM IRIS Y. MARTINEZ

Atty. for: Plaintiff                     DOROTHY BROWN, Clerk of C...

Address: 1 N. Franklin, Suite 1900

City: Chicago                            Date of Service: _____

State: IL   Zip: 60606                   (To be inserted by officer on copy left with
                                         Defendant or other person):
Telephone: 312-855-1105

Primary Email: rjleamy@wmlaw.com



FILED DATE: 5/16/2023 1:02 PM  2023CH03690

# CLERK OF THE CIRCUIT COURT OF COOK COUNTY OFFICE LOCATIONS

Richard J Daley Center
50 W Washington
Chicago, IL 60602

District 2 - Skokie
5600 Old Orchard Rd
Skokie, IL 60077

District 3 - Rolling Meadows
2121 Euclid
Rolling Meadows, IL 60008

District 4 - Maywood
1500 Maybrook Ave
Maywood, IL 60153

District 5 - Bridgeview
10220 S 76th Ave
Bridgeview, IL 60455

District 6 - Markham
16501 S Kedzie Pkwy
Markham, IL 60428

Domestic Violence Court
555 W Harrison
Chicago, IL 60607

Juvenile Center Building
2245 W Ogden Ave, Rm 13
Chicago, IL 60602

Criminal Court Building
2650 S California Ave, Rm 526
Chicago, IL 60608

## Daley Center Divisions/Departments

Civil Division
Richard J Daley Center
50 W Washington, Rm 601
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Chancery Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Domestic Relations Division
Richard J Daley Center
50 W Washington, Rm 802
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Civil Appeals
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Criminal Department
Richard J Daley Center
50 W Washington, Rm 1006
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

County Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Probate Division
Richard J Daley Center
50 W Washington, Rm 1202
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Law Division
Richard J Daley Center
50 W Washington, Rm 801
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm

Traffic Division
Richard J Daley Center
50 W Washington, Lower Level
Chicago, IL 60602
Hours:  8:30 am - 4:30 pm


American LegalNet, Inc.
www.FormsWorkFlow.com

**12-Person Jury**

FILED
4/17/2023 12:15 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2023CH03690
Calendar, 12
22317110

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT CHANCERY DIVISION

| | | |
|---|---|---|
| UNITED AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2023CH03690 |
| v. | ) | |
| | ) | |
| BRAINWAY AIRLINESERVICES | ) | |
| GES.M.B.H., | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Defendant, UNITED AIRLINES, INC. ("United"), by and through its

attorneys, WIEDNER & McAULIFFE, LTD., and for its Complaint for Declaratory Judgment

against Defendant, BRAINWAY AIRLINESERVICES, GES.M.B.H. ("Brainway"), states as

follows:

1.      United is a Delaware corporation with its principal place of business in Cook

County, Illinois.

2.      On information and belief, Brainway is an Austrian company with its principal

place of business in Vienna (Wien), Austria.

3.      On May 1, 2019, United and Brainway entered into a General Sales Agency

Agreement ("GSAA"). (GSAA, attached hereto as Exhibit 1).

4.      On May 1, 2020, United and Brainway entered into General Sales Agency

Agreement Amendment No. 1 ("GSAA Amendment No. 1"). (GSAA Amendment No. 1, attached

hereto as Exhibit 2).

5.      Pursuant to the GSAA, United appointed Brainway to act as United's General

Cargo Sales Agent responsible for the territory described in Appendix A to the GSAA. (Ex. 1 at

1

Article 1.A.; App. A to Ex. 1).

    6.    The preamble of the GSAA states that the GSAA "is made and entered into this 1st day of May, 2019, in the State of Illinois, United States of America, by and between" United and Brainway. (Ex. 1).

    7.    Article 1.B. of the GSAA states:

> The parties enter into this Agreement with the clear understanding that the sales agency relationship described herein is of a nonexclusive nature. This Agreement was made in reliance upon GSA's ability, financial responsibility and adequacy of facilities prior to the commencement date hereof. Therefore, GSA represents and warrants that (i) GSA understands the fixed term stated in Article 11 of this Agreement, (ii) it will not rely upon any continuation of this Agreement if it makes any additional investments in connection with this Agreement, and (iii) GSA waives any and all rights to claim any damages against United that may result from United's termination of this Agreement.

> (Ex. 1 at Article 1.B.).

    8.    Article 11 of the GSAA, as amended by GSAA Amendment No. 1, states:

> A. The term of this Agreement will commence on May 01, 2019, at 12:00 AM [Greenwich Mean Time], and will remain in full force and effect at United's sole discretion, until such time as United elects to terminate this Agreement by providing GSA with ninety (90) days written notice of United's election to terminate.

> B. At any time during the term of this Agreement, United shall have the right to terminate this Agreement, for convenience and without cause, upon ninety (90) days written notice to GSA, and GSA shall not have any right to terminate this Agreement solely for convenience.

> C. Any termination of this Agreement will not relieve either party from obligations incurred before the effective date of termination. Upon termination of this Agreement, all property of United will immediately be returned upon request to United, together with all moneys due and payable to United, and a complete and satisfactory accounting rendered. United reserves the right to withhold outstanding commissions until all conditions of this Article 11.C are satisfied."

> (Ex. 2 at Article 11).

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

9. Article 13 of the GSAA provides:

Both parties have considered the expenditures made and possible losses in the event of termination or non-renewal of the Agreement. EXCEPT FOR ACTUAL DIRECT DAMAGES, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR DAMAGES OF ANY KIND SUSTAINED OR ARISING OUT OF THE EXPIRATION, TERMINATION OR NONRENEWAL OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO, ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR OTHER DAMAGES, COMPENSATION FOR LOSS OF PROFITS OR PROSPECTIVE PROFITS, OR ON ACCOUNT OF EXPENDITURES, INVESTMENT, LOSSES OR COMMITMENTS IN CONNECTION WITH THE BUSINESS OF EITHER PARTY. Such expiration, termination or non-renewal shall not, however, relieve or release either party from making payments which may be owing to the other party under the terms of this Agreement.

(Ex. 1 at Article 13).

10. Article 15.A. of the GSAA states:

This Agreement shall be interpreted and construed in accordance with the laws of the State of Illinois of the United States of America. In the event of any dispute or controversy arising under this Agreement, GSA hereby irrevocably consents to the jurisdiction of the Courts of the State of Illinois and of any Federal Court located in such State in connection with any action or proceeding arising out of any such dispute or controversy. In any such litigation GSA waives personal service of any summons, complaint or other process and agrees that service may be made by certified or registered mail, or by express delivery directed to the GSA at its address set forth in the preamble of this Agreement.

(Ex. 1 at Article 15.A.).

11. On February 17, 2022, United issued a notice of termination to Brainway care of its parent company, ATC Aviation Services AG, terminating the GSAA pursuant to Article 11.B. of the GSAA. (February 17, 2022 Termination Letter, attached hereto as Exhibit 3).

12. On May 27, 2022, United sent another notice of termination to Brainway pursuant to Article 11.B. of the GSAA to Brainway's address listed in in the preamble of the GSAA, pursuant to Article 10 of the GSAA ("May 27, 2022 Termination Letter"). (May 27, 2022

3

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

Termination Letter, attached hereto as Exhibit 4).

13.     The May 27, 2022 Termination Letter stated that the GSAA would be terminated effective August 31, 2022, in accordance with the notice period in Article 11.B. (Ex. 4).

14.     On March 10, 2023, Brainway sent a demand letter to United ("Demand Letter") demanding that United pay Brainway €3,077,525.93 by March 31, 2023. (Demand Letter, attached hereto as Exhibit 5).

15.     Despite the fact that Article 15.A. of the GSAA provides that the GSAA is to be interpreted and construed in accordance with the laws of the State of Illinois, the Demand Letter asserts that the May 27, 2022 Termination Letter was ineffective because Section 21 of the Republic of Austria's Commercial Agent Act ("HVertgG") provides that contracts which have existed over a period of longer than six years may only be terminated by observing a minimum notice period of six months. (Ex. 5 at pp. 2-3). Brainway thus asserts that United could have only terminated the agreement by November 30, 2022 at the earliest. (Ex. 5 at p. 3).

16.     The Demand Letter further asserts that as of June 1, 2022, United appointed a new general sales agent in the territories exclusively allocated to Brainway. (Ex. 5 at p. 3).

17.     Brainway asserts that as a result of the implementation of the new GSA as of June 2, 2022 and the fact that the termination should not have taken effect prior to November 30, 2022, Brainway suffered damages in the amount of €1,375,779.30. (Ex. 5 at p. 4).

18.     Brainway also contends that pursuant to Council Directive 86/653/EEC and sections 24 subs. 1 and subs. 4 HVertG, it is entitled to compensation in the amount of €1,701,746.63 due to the long-standing business relationship and as a result of its activities as commercial agent. (Ex. 5 at pp. 4-5).

19.     The Demand Letter asserts that Brainway "expressly reserves the right to take

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

further measures" in the event payment in the amount of €3,077,525.93 is not made by March 31, 2023.

20.     United denies any liability to Brainway for the payments sought in the Demand Letter.

21.     United properly terminated the GSAA effective August 31, 2022 in accordance with Article 11.B. of the GSAA.

22.     The GSAA is governed by the laws of the State of Illinois and Brainway is not entitled to any compensation from United under European and/or Austrian law in connection with the termination of the GSAA.

23.     By reason of the foregoing, an actual controversy exists between United and Brainway, which may be determined by a judgment or order of this Court. Pursuant to the terms of section 5/2-701 of the Illinois Code of Civil Procedure (735 ILCS §5/2-701), this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto and to adjudicate the final rights of the parties and to give such other and further relief as may be necessary to enforce the same.

WHEREFORE, Plaintiff, UNITED AIRLINES, INC., respectfully requests that this Honorable Court find and declare:

      A. The Court has jurisdiction over this matter pursuant to Article 15.A. of the GSAA;

      B. That United properly terminated the GSAA pursuant to Article 11.B. of the GSAA;

      C. That the GSAA was terminated effective August 31, 2022;

      D. That the GSAA is governed by the laws of the State of Illinois;

5

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

E.  That Brainway is not entitled to any further compensation from United in connection with the termination of the GSAA;

F.  That a judgment be entered in United's favor and against Brainway accordingly; and

G.  Grant such other and further relief as this Court deems just and proper.

Respectfully submitted,

WIEDNER & McAULIFFE, LTD.

/s/ Richard J. Leamy, Jr.
Attorney for United Airlines, Inc.

Richard J. Leamy, Jr. – rjleamy@wmlaw.com
Lindsay Omolecki – lcomolecki@wmlaw.com
Wiedner & McAuliffe, Ltd.
1 North Franklin, Suite 1900
Chicago, IL 60606
(312) 855-1105

6

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

# EXHIBIT 1

FILED DATE: 4/17/2023 12:16 PM 2023CH03690



General Sales Agency Agreement
United Contract #: 131871
BRAINWAY AIRLINE SERVICES GESMBH - (Austria, Slovenia, Croatia, Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

## UNITED AIRLINES, INC.
## GENERAL SALES AGENCY AGREEMENT
(Cargo Sales Representative)

THIS AGREEMENT (hereinafter the "Agreement") is made and entered into this 1st day of May, 2019, in the State of Illinois, United States of America, by and between UNITED AIRLINES, INC., a Delaware corporation with its corporate offices located at 233 South Wacker Drive, Chicago, IL 60606, U.S.A. ("United"), and BRAINWAY AIRLINE SERVICES GESMBH, organized under the laws of Austria, having its principal offices at VIE-International Cargo Center, Gate 3, Flat 225, A-1300 Wien, Austria ("GSA").

## WITNESSETH:

In consideration of the premises and the mutual obligations hereinafter set forth, United and GSA agree as follows:

1.  **APPOINTMENT OF GENERAL SALES AGENT**

A.  United hereby appoints GSA as, and GSA hereby accepts such appointment and agrees to act as, United's General Cargo Sales Agent responsible for the territory more particularly described in Appendix A to this Agreement (the "Territory"). GSA will perform its obligations and duties as United's General Cargo Sales Agent in accordance with the terms and conditions set forth in this Agreement.

B.  The parties enter into this Agreement with the clear understanding that the sales agency relationship described herein is of a nonexclusive nature. This Agreement was made in reliance upon GSA's ability, financial responsibility and adequacy of facilities prior to the commencement date hereof. Therefore, GSA represents and warrants that (i) GSA understands the fixed term stated in Article 11 of this Agreement, (ii) it will not rely upon any continuation of this Agreement if it makes any additional investments in connection with this Agreement, and (iii) GSA waives any and all rights to claim any damages against United that may result from United's termination of this Agreement.

2.  **SCOPE OF GSA's AUTHORITY AND ACTIVITY**

GSA's authority to represent United is specifically limited to the authority expressly granted by this Agreement. During the term of this Agreement GSA will:

A.  Solicit and promote air cargo transportation for the services of United and service and supervise United-approved Cargo Sales Agents within the Territory (hereinafter referred to as "Sub-Agents").

B.  Provide adequate personnel who will work exclusively for the transaction of the business of United and perform GSA's obligations and duties under this Agreement.

C.  Provide and maintain a suitable area in its place of business to be used exclusively for the transaction of the business of United by the personnel referenced in Article 2.B.

D.  Sell air cargo transportation over United's routes and, in GSA's authorized offices located within the Territory, issue or complete Air Waybills, together with such additional documents as may be required by

FILED DATE: 4/17/2023 12:15 PM    2023CH03690


**UNITED**
**CARGO**

General Sales Agency Agreement
United Contract #: 181871

BRAINWAY AIRLINE SERVICES GESMBH - (Austria, Slovenia, Croatia, Slovakia, Czech Republic, Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

applicable laws or IATA resolutions. Only United Air Waybills, consistent with the form prescribed in the applicable IATA resolutions, may be used under this Agreement.

E.  Select, appoint, and supervise, subject to United's approval, locally licensed Sub-Agents in accordance with all applicable IATA resolutions; provided, however, that United will have the right to instruct or to reject the appointment of any such Sub-Agent. United will have the further right on its own behalf to appoint other Cargo Sales Agents within the Territory.

F.  Undertake publicity or press campaigns or other sales services to make the services of United known. When United requires special services of this nature, and the costs thereof have been specifically agreed upon in advance, the costs of any such special services will be paid for by United. If such costs have not been agreed upon in advance, United will not be responsible for any such costs, including but not limited to telephone, telegraph, mailing, printing, or other advertising or promotional expenses of GSA for any purpose. All advertising material issued by or at the expense of GSA in which reference is made to United must receive United's prior written approval in each instance.

G.  Perform any related services which may reasonably be included under the terms of this Agreement and which are mutually agreed upon between the parties hereto.

H.  Not represent another air carrier in the Territory as a general sales agent without notifying United, in writing to the principle offices of its intent to do so. If such representation already exists at the time of entering this Agreement, said representation(s) must be communicated to United in writing prior to execution of this Agreement. If GSA represents more than one carrier in the same territory, GSA will represent all carriers in an unbiased manner.

I.  GSA will provide United with written reports of all sales and marketing activities undertaken, in a manner requested by United, and such additional reports, information, or mailing lists, as United may reasonably request from time to time.

3.  **GSA COMMISSIONS**

The GSA will not receive any override commission; instead, United will issue gateway rates to the GSA that are applicable to all United Airlines air waybills (016) originating from points within the territory.

Compensation to the Agent shall be any margin earned by selling above the gateway rates, provided by United.

4.  **GENERAL**

A.  Although United has appointed GSA to perform the services described in this Agreement within the Territory, United may establish its own sales offices in the Territory, and sell any form of transportation, including air cargo transportation, at such offices. Unless otherwise stated to the contrary, no commissions or pricing incentives of any kind, including sales agency commission under this Agreement, will be paid to GSA on sales made at those United offices.

B.  Unless United advises GSA otherwise in writing, the provisions of this Agreement which are or may become in conflict with applicable IATA resolutions will be superseded by such resolutions. Any IATA resolutions which are or may be made applicable and mandatory upon United are hereby made a part of this Agreement and both parties will be bound by any such resolutions.

C.  All cargo transportation sold by GSA under the provisions of this Agreement will be sold subject to United's conditions and subject to United's tariffs, rules, regulations, and instructions governing the sale and use of such transportation, in force from time to time, as published in United's tariffs, and notices. GSA will transmit to United such specific instructions, requests, or particulars in connection with any particular client as may be advisable to enable United to render the most efficient service.

FILED DATE: 4/17/2023 12:15 PM   2023CH03690



General Sales Agency Agreement
United Contract #: 161671
BRAINWAY AIRLINE SERVICES GESMBH - (Austria,Slovenia, Croatia,Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

D. This Agreement will be subject to, and GSA will observe, all laws, statutes, rules, and regulations of any governmental body applicable to the sale of air cargo transportation or to any other acts performed by GSA under the terms of this Agreement.

E. At least seventy-five percent (75%) of the total annual sales of international air cargo transportation made under this agreement will not be controlled or originated by any firm, company, or organization by which the GSA may be employed or with which it may be associated.

F. GSA will not have in the Territory or any country within the Territory a substantial interest in the ownership, management, or profits of any cargo sales agent or a sufficient interest in the ownership, management, or profits of such agents to influence the commercial policy or management decisions of such agent. No cargo sales agent in the Territory or any country within the Territory will have a substantial interest in the ownership, management, or profits of GSA or a sufficient interest in the ownership, management, or profits of GSA to influence the commercial policy or management decisions of GSA.

G. GSA agrees that no credit card issued in the name of GSA, any Cargo Sales Agent of United in the Territory, or of their officers or employees will be used in connection with the sale of air cargo transportation or other services hereunder.

H. (i) GSA warrants to United that it will not make or promise to make any direct or indirect offer, promise, payment, or gift of any money or any other thing of value in connection with any activities of GSA pursuant to this Agreement to any official, agent, or employee of any government or agency thereof or to any political party or official thereof or any candidate for public office, or make any offer, promise, payment or gift that is otherwise illegal under applicable law. Further, GSA understands and accepts that it will accurately record and describe all receipts and expenditures of funds pursuant to this Agreement, and further warrants that all such transactions will be accurately recorded and described in its reports to United.

(ii) GSA further represents and warrants that (a) United will not be in violation of the U.S. Foreign Corrupt Practices Act by reason of acts or omissions of GSA or taken on its behalf and (b) no acts or omissions have occurred or will occur that would subject GSA or United to legal proceedings or investigations under the U.S. Foreign Corrupt Practices Act.

I. GSA acknowledges that it is the sole employer of its employees and that GSA is responsible for the actions of such employees. Under no circumstances will any employee of GSA or any employee of any Sub-Agent hereunder be construed to be an employee of United. If any GSA employee, Sub-Agent or employee of such Sub-Agent files a complaint against United, GSA will indemnify United with respect to such claim and assume liability for any such claim.

5. **COLLECTION AND SECURITY**

All moneys collected by GSA and all moneys due, whether or not collected by GSA, for air cargo transportation sold under this Agreement, including any commission withheld by GSA pursuant to Article 8, and all United documents necessary to cover such transportation will be and remain the property of United and will be retained by GSA and its Sub-Agents as the property of United until satisfactorily accounted for to United. United may audit and review GSA's documents, records, reports, or other written materials relating to its representation of United and any payments and reporting under this Agreement. GSA will be liable to United for any loss suffered by United through any action or inaction by GSA or its Sub-Agents.



FILED DATE: 4/17/2023 12:15 PM    2023CH03690



General Sales Agency Agreement
United Contract #: 181371
**BRAINWAY AIRLINE SERVICES GESMBH - (Austria,Slovenia, Croatia,Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)**
Effective May 01, 2019

**6.    INDEMNITY**

A.    GSA will obey and observe all directions and instructions given to it by United relating to the sale of air cargo transportation or any other facet of this Agreement.  GSA hereby agrees to indemnify and hold harmless United, its officers, agents, employees, and servants, from all responsibility and liability including costs and attorneys fees, for any injury, damages, expense, or loss to any person or property caused by or arising from any violation of this Agreement, or any negligent act, omission, willful misconduct, or misrepresentation of GSA, its officers, agents, employees, or servants.

B.    GSA hereby agrees to indemnify and hold harmless United, its officers, agents, employees, and servants from any damage, expense, or loss incurred for any reason whatsoever, including costs and attorneys fees, in connection with Air Waybills, or any other documents issued by GSA on the authority of United or materials furnished by United to GSA, or the proceeds thereof, whether or not such loss is occasioned by the default or insolvency of either a purchaser or of a bank in which GSA may have deposited such proceeds and notwithstanding the fact that under the terms of this Agreement such proceeds are the property of United and held in trust by GSA, all except to the extent caused by the negligence or willful misconduct of United.

C.    Except as provided in this Agreement, all claims and indemnities will be resolved in accordance with the standard provision of the applicable IATA resolutions and agreements; provided, however, that GSA will reimburse United for any penalties assessed against United for the actions of GSA or its Sub-Agents not in conformity with the governing IATA resolutions.

**7.    TAXES**

A.    GSA will assume all responsibility for filing all necessary tax returns and for payment of all taxes (other than net income taxes) imposed by any governmental authority of the country or locality in which GSA is located and operates.  If a value added or per shipment tax is required to be paid, GSA will make such payment to the government on United's behalf, without resort to reimbursement.

B.    GSA agrees to indemnify and hold United harmless from any penalties or interest incurred as a result of any failure by GSA to timely file returns or pay taxes as required under Article 7A.

C.    GSA will collect any applicable taxes on all cargo sold or transported under this Agreement.

**8.    TRANSFER-ASSIGNMENT-MERGER**

A.    GSA will not assign or transfer this Agreement, in whole or in part, without the prior written consent of United.

B.    If GSA acquires or controls another entity or merges with or is acquired or controlled by another person or entity which does not as of the date of this Agreement own or have a controlling interest in GSA, then United will have the option to terminate this Agreement without liability; except that all liabilities of either party accruing before termination or which are of a continuing nature will survive such termination.

C.    The GSA is required to notify United, in writing, of changes as defined in 7.B within 10 days of each occurrence.

**9.    TRADEMARKS AND TRADE NAMES**

GSA recognizes United's exclusive rights in and to its trademarks and trade names and the good will associated therewith, and GSA agrees to conduct its business operations in a manner consistent with the preservation and protection of such exclusive rights.  Specifically, and without limiting the generality of the foregoing, GSA agrees not to use in its corporate or business name, except as specifically agreed upon in

FILED DATE: 4/17/2023 12:15 PM 2023CH03690



**UNITED CARGO**

General Sales Agency Agreement
United Contract #: 181871

BRAINWAY AIRLINE SERVICES GESMBH - (Austria, Slovenia, Croatia, Slovakia, Czech Republic, Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

writing by United, any of such trademarks or trade names either during the term of this Agreement or after its expiration or termination. GSA also agrees that upon expiration or termination of this Agreement, it will discontinue and thereafter refrain from any and all representations that it is a general cargo sales agent or reseller of United's services.

**10.  NOTICES**

All notices required under this Agreement will be sent by electronic means, or by airmail, or by express company and addressed to the respective principal offices of each party, as stated in the preamble of this Agreement.  All notices must specifically reference the United Contract Number.

**11.  TERM OF AGREEMENT**

A.  The Term of this Agreement will commence on May 01, 2019, at 12:00 AM [Greenwich Mean Time], and will remain in effect for an initial term of one (1) year (the "Initial Term").  At the conclusion of the Initial Term, United will evaluate GSA's performance over the Initial Term, and at United's sole discretion, United may either terminate this Agreement upon thirty (30) days notice to GSA, or extend this Agreement for an addition term of one (1) year (a "Renewal Term").  Thereafter, the Agreement shall automatically renew for additional Renewal Terms of one (1) year each (all Renewal Terms and the Initial Term, hereinafter the "Term"), until United elects to terminate this Agreement pursuant to Article 11.2 below.

B.  Following the conclusion of the Initial Term, at any time during any Renewal Term, United shall have the right to terminate this Agreement, for convenience and without cause, upon ninety (90) days notice to GSA, and GSA shall not have any right to terminate this Agreement solely for convenience.

C.  Any termination of this Agreement will not relieve either party from obligations incurred before the effective date of termination.  Upon termination of this Agreement, all property of United will immediately be returned upon request to United, together with all moneys due and payable to United, and a complete and satisfactory accounting rendered.  United reserves the right to withhold outstanding commissions until all conditions of this Article 11 are met.

**12.  TERMINATION FOR CAUSE**

A.  If either party (the "Defaulting Party") becomes insolvent; if the other party (the "Insecure Party") has evidence that the Defaulting Party is not paying its bills when due without just cause; if the Defaulting Party takes any step leading to its cessation as a going concern; or if the Defaulting Party either ceases or suspends operations for reasons other than a strike, then the Insecure Party may immediately terminate this Agreement on notice to the Defaulting Party.

B.  If the Defaulting Party fails to observe or perform any of its obligations under this Agreement and, if this failure continues for a period of fifteen (15) days after written notice to the Defaulting Party thereof (except for any payments due, where the period to cure such nonpayment will be five (5) days after notice), then, without prejudice to any other rights or remedies the other party may have, this Agreement will terminate as of the expiration date of the notice period.  The Defaulting Party hereby expressly waives any right to claim damages that are in any way associated with any termination under this Article 12.

C.  Exercise by either party of its right to terminate hereunder will in no way affect or impair its right to bring suit for any default or breach of this Agreement.





General Sales Agency Agreement
United Contract #: 181871
BRAINWAY AIRLINE SERVICES GESMBH - (Austria,Slovenia, Croatia,Slovakia, Czech Republic, Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

**13. EXCLUSION OF CONSEQUENTIAL DAMAGES**

Both parties have considered the expenditures made and possible losses in the event of termination or non-renewal of the Agreement. EXCEPT FOR ACTUAL DIRECT DAMAGES, NEITHER PARTY SHALL BE LIABLE TO THE OTHER FOR DAMAGES OF ANY KIND SUSTAINED OR ARISING OUT OF THE EXPIRATION, TERMINATION OR NONRENEWAL OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR OTHER DAMAGES, COMPENSATION FOR LOSS OF PROFITS OR PROSPECTIVE PROFITS, OR ON ACCOUNT OF EXPENDITURES, INVESTMENT, LOSSES OR COMMITMENTS IN CONNECTION WITH THE BUSINESS OF EITHER PARTY. Such expiration, termination or non-renewal shall not, however, relieve or release either party from making payments which may be owing to the other party under the terms of this Agreement.

**14. NONDISCLOSURE**

Except in any proceeding to enforce the provisions of this Agreement, neither party will disclose to any third party the financial terms of this Agreement, the terms contained in any Appendix to this Agreement, or any other confidential information of the other party, including orders, forecasts, financial or marketing plans or data, or any data processing programs or procedures. This provision will survive any termination or expiration of this Agreement.

**15. GOVERNING LAW AND NON-ENGLISH VERSIONS**

A. This Agreement shall be interpreted and construed in accordance with the laws of the State of Illinois of the United States of America. In the event of any dispute or controversy arising under this Agreement, GSA hereby irrevocably consents to the jurisdiction of the Courts of the State of Illinois and of any Federal Court located in such State in connection with any action or proceeding arising out of any such dispute or controversy. In any such litigation GSA waives personal service of any summons, complaint or other process and agrees that service may be made by certified or registered mail, or by express delivery directed to the GSA at its address set forth in the preamble of this Agreement.

B. Notwithstanding the above, as the selection of laws and jurisdiction has been made in favor of United, United shall have the right, if it so desires, to submit itself to the jurisdiction of the country in which GSA conducts its business affairs.

C. If any non-English interpretive versions of this Agreement are created, then in the event of a conflict between this English version and any non-English version, this English version will control.

**16. EXISTING OBLIGATIONS**

GSA represents and warrants that the terms of this Agreement do not violate any existing obligations or contracts of GSA, or any local laws. GSA shall defend, indemnify and hold United harmless from and against any and all claims, demands or causes of action which are hereafter made or brought against United alleging any such violation.

**17. ENTIRE AGREEMENT**

This Agreement, including its Appendices, constitutes the entire agreement and understanding of the parties on the subject matter hereof, and, as of the effective date, supersedes all prior agreements between the parties, whether written or oral, covering the subject matter hereof, including any which may have been the subject of an assignment. This Agreement may be modified only by further Agreement signed by both parties.

FILED DATE: 4/17/2023 12:15 PM    2023CH03690


**UNITED CARGO**

IN WITNESS WHEREOF, United and GSA have caused this Agreement to be executed as of the date first
above written.

| BRAINWAY AIRLINE SERVICES GESMBH | UNITED AIRLINES, INC. |
|---|---|
| By: | By: |
| Name:    Guenther Pepl | Name:    Jan Krems |
| Title:    Managing Director | Title:    President, United Cargo Vice President United Airlines, Inc. |
| Date:    17ʰ April 2019 | Date:    04-22-2019 |

FILED DATE: 4/17/2023 12:15 PM   2023CH03690



UNITED CARGO

General Sales Agency Agreement
United Contract #: 181871
BRAINWAY AIRLINE SERVICES GESMBH <(Austria,Slovenia, Croatia,Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

## APPENDIX A

## TERRITORY

The Territory within which the GSA's activities will be carried on under this General Sales Agency Agreement is comprised of:

- The Austria, Slovenia, Croatia, Slovakia, Czech Republic, Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia origin accounts as assigned by United (each the "Account," collectively the "Accounts").

- The GSA Territory is defined as the assigned Accounts based on shipper and Austria, Slovenia, Croatia, Slovakia, Czech Republic, Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia origin account locations as defined by United and subject to changes as described in Section 4A of this agreement. Shipper/origin locations may change from time to time. In the event of additions, deletions, or changes, the Territory assignment served by GSA on the first day of the month will be those included in the Territory for that whole month.

FILED DATE: 4/17/2023 12:15 PM   2023CH03690



General Sales Agency Agreement
United Contract #: 181871

BRAINWAY AIRLINE SERVICES GESMBH - (Austria,Slovenia, Croatia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

## APPENDIX B

For purposes of this Agreement, "All Inclusive Retained Freight Revenue", shall include Base rate
plus Fuel Surcharge (MY) and Freight Processing Fee (MC).

(1)   All cargo transported must be over the routes of United/Lufthansa or routes authorized by United
      under Appendix D, and sold within the Territory provided to GSA or it's Sub Agents;

(2)   Revenue generated from cargo sales made by GSA is eligible only if a United Air Waybill was issued
      by GSA and used for the applicable carriage under this Agreement;

(3)   All air waybills must be issued/rated at or above the approved retained base freight weight rates as
      provided by United/Lufthansa;

(4)   All air waybills must be issued and used pursuant to established IATA rules and all conditions set
      forth in this Agreement;

(5)   " All-Inclusive Retained Freight Revenue", Base Rate plus Fuel Surcharge (MY) and Freight
      Processing Fee (MC), will exclude all other applicable taxes, fees, surcharges, additional costs, and
      any other overrides or commissions earned;

(6)   GSA will be paid in local currency, if applicable.


### GSA COMMISSION


### A.   United (UA) shipments (016 Air Waybill Prefix) traveling on UA flight

The GSA will not receive any override commission; instead, United will issue gateway rates to the GSA that
are applicable to all United Airlines air waybills (016) originating from points within the territory.

Compensation to the Agent shall be any margin earned by selling above the gateway rates, provided by
United.

GSA margins on gateway rates should not exceed 10%, on average, per quarter.


### B.   United (UA) shipments (016 Air Waybill Prefix) traveling on LH flight

A monthly commission of 3.5% will be earned by GSA on the total "All Inclusive Freight Revenue", defined
as Base Rate plus Fuel Surcharge (MY) and Freight Processing Fee (MC), shipped in accordance with this
Agreement during the previous calendar month.   The commission is applied ONLY to 016 shipments
traveling on LH flight originating in the country of Austria, Slovenia, Croatia, Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia.   Shipments transiting the country of
Austria, Slovenia, Croatia, Slovakia, Czech Republic, Poland, Hungary, Bulgaria, Romania, Bosnia,
Macedonia and Serbia are not eligible for commissions.   Commissions will be paid to the GSA as specified in
Appendix C.



FILED DATE: 4/17/2023 12:15 PM   2023CH03690



General Sales Agency Agreement
United Contract #: 161871
BRAINWAY AIRLINE SERVICES GESMBH - (Austria, Slovenia, Croatia, Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019.

## APPENDIX C

### UNITED AIR WAYBILL REVENUE ACCOUNTING

The following revenue accounting procedures will be used in the administration of United's Air Waybills under
the General Sales Agency Agreement:

(1) United Cargo Accounting (WHQFA) will invoice the GSA all the United Cargo Invoices generated from
Rapid within the periods established by IATA.

(2) The GSA is expected to submit all funds to United Cargo Accounting (WHQFA);
cargoaccounting@united.com) within 30 days from invoice date and include a detailed sales report to
support the payment.

(3) Banking Information:  The GSA is responsible to liaise with United's local Finance Department to ensure
their payments to United are made timely and to the correct bank account.

(4) For shipments (016 Air Waybill Prefix) traveling on Lufthansa (LH) flight, GSA will be paid by United
based on any commission earned under the terms of this agreement.  United Cargo Accounting office
(WHQFA) will pay GSA based entirely on United's records.  Detail of GSA payment processing as
described below:

  4.1 All invoices, sales reports, support and correspondence for GSA commission needs to be sent to
cargointernational@united.com.

  4.2 GSA will provide their banking information, on their letterhead, to cargointernational@united.com.

  4.3 United's payment to GSA for commission earned shall be made within 15 days of receiving all
monies due United and after we have reconciled the GSA Sales Report/Invoice against RAPID files;

  4.4 In all cases, payments to the GSA require approval by United's Cargo Accounting office
(WHQFA).

FILED DATE: 4/17/2023 12:15 PM   2023CH03690



**UNITED CARGO**

General Sales Agency Agreement
United Contract #: 181871
BRAINWAY AIRLINE SERVICES GESMBH - (Austria,Slovenia, Croatia,Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

## APPENDIX D

### UNITED APPROVED INTERLINE ROUTINGS

United may authorize interline routings on selected carriers over selected routings.

Use of other carriers, or routings, resulting in unauthorized charges will be the responsibility of GSA.

FILED DATE: 4/17/2023 12:15 PM 2023CH03690



General Sales Agency Agreement
United Contract #: 181871
BRAINWAY AIRLINE SERVICES GESMBH - (Austria,Slovenia, Croatia,Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

## APPENDIX E

### UNITED APPROVED NET/NET FREIGHT WEIGHT RATE CHARGES AND PRODUCTS

Intentionally left blank

Page 12 of 14

FILED DATE: 4/17/2023 12:15 PM   2023CH03690



General Sales Agency Agreement
United Contract #: 181871
BRAINWAY AIRLINE SERVICES GESMBH - (Austria,Slovenia, Croatia,Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

## APPENDIX F

### DATA INTEGRITY REQUIREMENTS

Accurate and timely data entry are hallmarks of quality service. United Cargo believes that without quality data, there can be no quality service. The following points provide further detail on United's data integrity requirements as applicable once implemented:

1. UC360 Customer Profile Database

   GSA will request via email to cargoapps@united.com, the addition, removal, and modification of customer and account number data.
   Each customer must have a United authorized IATA number or a United Cargo Account Number as required.

2. Capture and update all data in United's systems as per United's procedures.

FILED DATE: 4/17/2023 12:15 PM    2023CH03690



General Sales Agency Agreement
United Contract #: 181871

BRAINWAY AIRLINE SERVICES GESMBH - (Austria,Slovenia, Croatia,Slovakia, Czech Republic,
Poland, Hungary, Bulgaria, Romania, Bosnia, Macedonia and Serbia)
Effective: May 01, 2019

## APPENDIX G
## GENERAL SALES AGENTS LETTER OF CREDIT / BANK GUARANTEE REQUIREMENTS

The General Sales Agent ("GSA") will be required to maintain a bank letter of guarantee or letter of credit ("Security") in a form satisfactory to United Airlines, Inc. ("United") and in an amount which should be sufficient to cover sixty (60) days of cash remittances to United. At its option, United may vary the amount of the required Security from time to time based GSA's performance of the Agreement and the amount of Cargo sales hereunder. United reserves the right to request, at its option, that the Security be drawn on a bank whose office is outside the Territory.

To secure any and all amounts or obligations due or which may become due to United, GSA will establish and provide to United a Standby Irrevocable Letter of Credit ("LOC") or Bank Guarantee in the amount of EUR1,350,000, conforming to the terms and conditions set forth below.

1.  All LOC's/Bank Guarantees must be drafted and presented in the English language. United reserves the right to required confirmation of international documents by a bank located in the United States. Any required translation and translation costs are the responsibility of the GSA.
2.  The amount of the LOC/Bank Guarantee will be determined by the twelve (12) month average sales of the Territory, and/or the Cargo Sales, Revenue Management, or credit policies of United.
3.  The LOC/Bank Guarantee must be irrevocable naming United as sole beneficiary, drawn on a bank acceptable to United, providing for immediate payment to United upon presentation of a sight draft, which specifies the amount to be paid and is accompanied by a statement from United certifying that United has not been paid.
4.  The LOC/Bank Guarantee must state:

*"Drafts under this Letter of Credit/Bank Guarantee are to be drawn at sight upon this Bank accompanied by a signed statement saying that the amount stated is payable to United Airlines, Inc., because BRAINWAY AIRLINE SERVICES GESMBH has failed to pay amounts due to United Airlines, Inc."*

5.  Partial drawings against the LOC/Bank Guarantee are to be permitted.
6.  All administrative charges relating to the LOC/Bank Guarantee are for the account of the GSA.
7.  Bank Guarantees should be issued as non-accessory or unconditional, in accordance with ICC International Standard Practices and ICC Uniform Rules.
8.  Letters of Credit should be issued in accordance with the Uniform Customs and Practice for Documentary Credits ICC Publication No.600.
9.  LOCs/Bank Guarantees should contain an evergreen (automatic renewal) clause, or GSA will be required to secure renewal within thirty (30) days of expiration.
10. All LOC/Bank Guarantees and related correspondence should be sent via Courier, registered mail or equivalent secure mail service to:

United Airlines, Inc.
Attn: Credit Manager
609 Main Street, HSCAC, 12th Floor
Houston, TX 77002

It is understood and agreed that United reserves the right to periodically review the amount of such LOC/Bank Guarantee, and if necessary, require such amount to be increased or decreased, subject to thirty (30) days prior written notice to GSA. If GSA fails to establish or amend the LOC/Bank Guarantee as requested by United, then United may terminate any one or more agreements that United entered into with GSA in reliance upon the LOC/Bank Guarantee required by this Agreement.

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

# EXHIBIT 2

**UNITED CARGO**

BRAINWAY AIRLINE SERVICES GESMBH (Austria, Bulgaria, Croatia, Hungary, Poland, Slovakia, Slovenia, Czech Republic, Romania, and Germany)

General Sales Agency Agreement Amendment No. 1

United Contract No. 18434
RE: United Contract No. 18434
Date of May 01, 2019
("the Agreement")

# UNITED AIRLINES, INC.
## GENERAL SALES AGENCY AGREEMENT AMENDMENT NO. 1

**THIS AMENDMENT No. 1** is made this 1 day of May, 2020, by and between UNITED AIRLINES, INC., a Delaware USA corporation (United) and BRAINWAY AIRLINE SERVICES GESMBH, a company operating in Austria ("GSA"), to amend the General Sales Agency Agreement entered into between United and GSA dated May 01, 2019 and denominated as United Contract No. 18434 ("the Agreement").

**WHEREAS,** the parties desire to amend the Agreement in order to update Article 11, first Term of the Agreement and for make other necessary adjustments.

**NOW, THEREFORE,** in exchange for the mutual covenants contained herein and in the Agreement, and other good and valuable consideration, the receipt and sufficiency and adequacy of which are hereby acknowledged, United and GSA agree to amend the Agreement as follows:

1. Article 11 of the Agreement, titled "Term of the Agreement" is hereby deleted in its entirety and replaced with the following new Article 11:

## 11. TERM OF AGREEMENT AND TERMINATION FOR CONVENIENCE

A. The term of this Agreement will commence on May 01, 2019, at 12:01 AM (Central Time) (the "Effective Date") and will continue in full force and effect, at United's sole discretion, until such time as there is a right to terminate this Agreement by providing GSA with ninety (90) days' written notice of United's election to terminate.

B. At any time during the term of this Agreement, United shall have the right to terminate this Agreement for convenience and without cause, upon ninety (90) days' written notice to GSA, and GSA shall not have any right to terminate this Agreement solely for convenience.

C. Any termination of this Agreement will not relieve either party from obligations accrued up to the effective date of termination. Upon termination of this Agreement, all property of United will be immediately be returned upon request to United, located within, immoral, and the property of United, and a complete and satisfactory accounting rendered. United reserves the right to withhold outstanding commissions and funds pending the settlement of this Article and the reconciliation.



BRAINWAY AIRLINE SERVICES GEBMBH

The terms set forth herein are deemed to be incorporated in the Agreement. All other terms and conditions of the Agreement will remain in full force and effect. Terms used herein without definition shall have the meaning ascribed to the Agreement.

IN WITNESS WHEREOF, undersigned CSA have executed this Amendment No. 2 to be as of the date first written above.

| BRAINWAY AIRLINE SERVICES GEBMBH | UNITED AIRLINES, INC. |
|---|---|
| By: | By: |
| Name: Guenther Hahn | Name: Jan Krems |
| Title: Managing Director | Title: President (United Cargo) Vice President United Airlines, Inc. |
| Date: | Date: |

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

# EXHIBIT 3

FILED DATE: 4/17/2023 12:15 PM   2023CH03690



**UNITED CARGO**

February 17, 2022

Mr Ingo Zimmer
Global Headoffice
ATC Aviation Services AG
Cargo City South · Bldg. 641
60549 Frankfurt-Airport/Germany
Phone: +49 (0) 69 698053-11
Fax:     +49 (0) 69 698053-21

Re:  Termination of the General Sales Agency Agreement between United Airlines, Inc.
and ATC Aviation Services LTD, dated May 01, 2019 and denominated as United Contract
#181871 (the "Agreement")

Dear Mr Ingo Zimmer,

This letter constitutes the required notice of United's exercise of its right to terminate the
Agreement under Article 11.B of the Agreement.  Recognizing the required notice period
under Article 11.B, which is a minimum of ninety (90) days, the effective date of the
termination of the Agreement will be May 31, 2022.  No further action is required on the
part of either Party to give effect to the effective termination of the Agreement on May
31, 2022.  United looks forward to working cooperatively with ATC Aviation to achieve a
smooth transition, and we propose a call or meeting to discuss coordination.

Thank you for being our partner and please give my best to everyone on your team, as I
know that they played no small role in perform its obligations and duties as United's Cargo
General Sales Agent.

Sincerely,

Jan Krems
President, United Cargo
Vice President, United Airlines, Inc.

United Cargo- Corporate Support Center, 233 South Wacker Drive, Chicago, Illinois 60606, USA

FILED DATE: 4/17/2023 12:15 PM    2023CH03890

# EXHIBIT 4

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

May 27, 2022

Mr. Christoph Fasching
Managing Director
Brainway Airlineservices Ges.m.b.H
A-1300 Vienna-Airport
VIE Int. Cargocenter
Gate 1, Flat 03-113
Austria

**Re: Termination of the <u>General Sales Agency Agreement</u> between United
Airlines, Inc. and Brainway Airline Services GESMBH, dated May 01, 2019
and denominated as United Contract #181871 (the "Agreement")**

Dear Mr. Fasching,

This letter constitutes notice of United's decision to exercise its right to terminate the
Agreement for convenience under Article 11.B of the Agreement. Recognizing the
required notice period under that Article, the effective date of the termination of the
Agreement will be August 31, 2022. No further action is required on the part of either
Party to give effect to the termination of the Agreement. Our EMEIA team will work
cooperatively with you to achieve a smooth transition and will contact you shortly to
discuss coordination towards this goal.

Thank you for being our partner and please give my best to everyone on your team, as I
know that they played no small role in perform its obligations and duties as United's
General Cargo Sales Agent.

Sincerely,

Jan Krems
President, United Cargo
Vice President, United Airlines, Inc.

FILED DATE: 4/17/2023 12:15 PM   2023CH03690

# EXHIBIT 5

FRANKFURT AM MAIN
BAD VILBEL
BERLIN
wshp.law



FILED DATE: 4/17/2023 12:15 PM   2023CH03690

WSHP Rechtsanwälte und Notare · Friedrich-Ebert-Anlage 58 · 60325 Frankfurt am Main

United Airlines, Inc.
Attn. Mr. Jan Krems
President United Cargo
233 South Wacker Drive
Chicago, IL 60606
USA

in advance via email: jankrems@united.com
maurice.fuchs@united.com
jacques.leiljessenaar@united.com
stephane.brochet@united.com
vania.vit@united.com
garrison.phillips@united.com

10 March 2023 * 30/R
Brainway./. United Airlines, Inc.* 10014/22
in charge: Senior Legal Counsel Strahl
secr.: Ms Regula-Knecktys* direct: +49 (0) 69 75699-132

## Notice of Termination – General Sales Agency Agreement between United Airlines, Inc. (UA) and Brainway Airlineservices Ges.m.b.H. effective 01 May 2019

Dear Mr. Krems,

We herewith give notice that we represent the legal interests of Brainway Airlineservices Ges.m.b.H., Gate1, Flat 03-112, VIE Int. Cargocenter, 1300 Vienna Airport, Austria (hereinafter: Brainway).

On 1 May 2019, UA concluded a further Cargo General Sales Agency Agreement (hereinafter: the Agreement) with Brainway.

In the past years since September 2011 during which our client operated as GSA for UA, your business has made excellent

Jürgen Wiegand
Rechtsanwalt und Notar*

Stefan Striether
Rechtsanwalt

Mirko Sprengnether
Rechtsanwalt und Notar*
Fachanwalt für Bank- und
Kapitalmarktrecht

Holger Strahl
Rechtsanwalt

Julia Wissto
Rechtsanwältin und Notaria

Susanne Lang
Rechtsanwältin und Notaria
Solicitor (England & Wales)

Stefanie Pirifiano
Rechtsanwalt

Ingrid Scheer
Rechtsanwältin

Michael Rödder
Rechtsanwalt.

Wiegand Striether Sprengnether
Strahl Wissto Lang Partnerschaft
von Rechtsanwälten mbB

Friedrich-Ebert-Anlage 58
60325 Frankfurt am Main

Telefon +49 (0)69 75 699-0
Telefax +49 (0)69 75 699-105

frankfurt@wshp.law

www.wshp.law

Amtsgericht Frankfurt am Main
PR 2777

Commerzbank
IBAN
DE66 5004 0000 0355 0100 00
BIC
COBADEFXXX

Frankfurter Sparkasse
IBAN
DE80 5005 0201 0000 2766 70
BIC
HELADEF1822

USt-IdNr. DE112290847

*Amtssitz in Bad Vilbel

FILED DATE: 4/17/2023 12:15 PM   2023CH03650

progress. The load factors achieved by our client has continuously been very high. To our client's surprise, she was informed by third parties on 19 May 2022 that UA had informed all stations worldwide that UA would be working with a new GSA in the territories exclusively designated for our client as early as 1 July 2022. Our client's managing director then immediately notified you of this assertion in a letter dated 20 May 2022 and asked for confirmation that the existing GSA contract would continue without restriction beyond the aforementioned date and would therefore be further fulfilled by UA.

Without UA ever having had a reason to complain or having been dissatisfied with our client's performance, our client received your letter dated 27 May 2022 on 30 May 2022 by email of Mr. Leijssennaar. With this termination letter you stated that the Agreement shall be terminated by 31 August 2022.

In light of the foregoing, Brainway had to realize that UA intends to terminate, at short notice and without any previous information thereof, a longstanding business relationship. Moreover this is despite the fact that Brainway built up and enlarge UA's entire reservation and sales structures.

Immediately after receipt of the termination letter and thus before the effective termination of the agreement, the entire UA dedicated team and other employees of our client were approached by the new agent selected by you, in breach of the contractual agreements, and were finally taken over, as was the subcontractor SAT Albatros commissioned by our client for the territory in Slovenia, which means a takeover of the entire sales structure established by our client over the entire term of the contractual relationship since 15 September 2011.

After all and due to the long-lasting business relationship with UA our client feels obliged to inform you about the implications of your termination dated 27 May 2022.

1.   Ineffectiveness of the Termination

Firstly, we would like to emphasize that the termination pronounced by you dated 27 May 2022 is ineffective.

In accordance with Article 15 (3) of the Council Directive, the EU Member States may extend the notice periods for agency contracts beyond the periods defined in the

FILED DATE: 4/17/2023 12:15 PM   2023CH03950

Council Directive. This was the case in the Republic of Austria pursuant to section 21 of the Commercial Agent Act (HVertrG). Agency contracts such as the present Agreement which have existed over a longer period of more than six (6) years may only be terminated by observing a minimum notice period of six (6) months. Thus, under Austrian law, UA would have been able to duly terminate the agreement by 30 November 2022 at the earliest. The termination pronounced by you does not consider this period, so that it is ineffective according to Austrian law in connection with the Directive of the European Parliament.

To that end, as our client's current contract has not yet been terminated in line with the Council Directive 86/653/EEC and Austrian laws by the provision of a 6 month termination notice, we hereby advise that the latter will subsequently assert claims for damages due to non-compliance with the statutory notice periods.

2. Compensation for the loss of commissions due to non-compliance with the mandatory notice period and the assignment of another GSA in breach of contract

As already explained above under point 1, despite the existence of the GSA contract concluded with our client, the new GSA already became active in the territories exclusively allocated to our client as of 1 June 2022.

or the aforementioned reasons, we see this action not only as a significant violation of UA's contractual and legal obligations.

Moreover, the action initiated by you is also likely to violate Austrian competition law and Austrian civil law as well as UA's compliance rules. As far as our client is aware, the new GSA was obviously appointed directly by you and not according to the result of a tender - in which our client could also have participated as a contractual partner. Furthermore, the new GSA for Austria, Bulgaria, Croatia, Macedonia, Romania, Serbia, Slovakia, Slovenia, the Czech Republic, Hungary and Poland is a company which did not have any branches in these countries and was not familiar with these markets and had also been founded only recently. A successful history of the company can therefore not have been the reason for the surprising commissioning of this GSA. We are currently still in charge of examining whether and, if so, which legally protected legal interests were violated by UA.

FILED DATE: 4/17/2023 12:16 PM   2023CH03690

4

However, our client suffered demonstrable damage because the new GSA was implemented in the aforementioned territories as of 1 June 2022 and therefore hardly any business was handled via our client. Therefore, our client's commissions, which had amounted to € 3,079,760.60 in the period from January to December 2021 and thus to a monthly average of € 256,646.71, collapsed in the period from June to August 2022 to a total of € 164,100.96, i.e. a monthly average of € 54,700.32 (commission in the month of June 2022: € 82,042.73, July 2022: € 65,281.96 and August 2022: € 16,176.27).

Since your new GSA was able to continue to use the sales structures created by our client unchanged, UA did not suffer any loss of turnover. However, our client has suffered damages of at least €1,375,779.30 (6 x €256,646.71 - €164,100.96) in the months of June, July and August 2022 compared to the previous year's sales as a result of UA's conduct in breach of contract and the law, as well as further commission damages of €256,646.71 for the month of September, October and November 2022 due to the fact that the notice of termination should have been effectively given no earlier than 30 November 2022.

We hereby claim in the name of and on behalf of our client the total damages incurred in the amount of € 1,375,779.30 within the time limit set out in clause 5.

3. Commericial Sales Agent Indemnification Payment Claim

Furthermore we have to inform you that after the effective termination of the Agreement, our client is entitled to various compensation claims resulting from the Agreement pursuant to Council Directive 86/653/EEC and section 24 subs. 1 and subs. 4 HVertrG (Österreichisches Handelsvertretergesetz) due to the long-standing business relationship.

The Agreement is not opposed to this, as in accordance with the Council Directive 86/653/EEC dated 18 September 1986 on the coordination of the laws of the Member States relating to self-employed commercial agents (OJ L. 382 page 17 European Court of Justice) the European Council decided in its policy decision dated 09 November 2000 (INGMAR GB Ltd. vs. EATON LEONARD TECHNOLOGIES Inc.) that the laws of the EU Member States granting self-employed commercial agents such as our client compensation claims shall also be applied when the commercial agent has carried out his activities in an EU Member State while the contractor is headquarted

FILED DATE: 4/17/2023 12:15 PM   2023CH03890

5

in a third country and the Agreement stipulates that the laws of that country (here: USA) shall apply.

In accordance with section 24 subs. 1 and subs. 4 HVertrG, our client is therefore entitled to compensation resulting from its activities as commercial agent, whereby the calculated annual commission is based on the average business activities of the past five years. If the contractual relationship has lasted less than five years, the average of the entire contractual period shall be decisive.

The compensation is calculated as follows:

| | |
|---|---|
| Annual commission SEP 2017 – AUG 2018 | 1,167,278.80 € |
| Annual commission SEP 2018 – AUG 2019 | 1,064,833.71 € |
| Annual commission SEP 2019 – AUG 2020 | 1,048,240.03 € |
| Annual commission SEP 2020 – AUG 2021 | 2,752,691.77 € |
| Annual commission SEP 2021 – AUG 2022 | 2,475,688.84 € |

./. 5 = average commission

**as per section 24 HVertrG**                    **1,701,746.63€**

4. Incident in Switzerland

For the sake of completeness, we would like to announce that another similar incident with UA is currently being investigated in our client's group. This concerns the termination of the GSA contract in Switzerland without cause. The existing GSA contract was transferred to the same new GSA as described above. In this context, it was found that even during the existence of the GSA contract, employees of the newly appointed GSA approached our clients staff and employees were enticed away to the new GSA. UA employees were demonstrably also involved in these discussions. This is also likely to be in significant breach of contractual obligations as well as legal facts. You and the UA management will be contacted after the investigations in Switzerland have been completed.

FILED DATE: 4/17/2023 12:15 PM  2023CH03890

6

5. Conclusion

Finally, our client's shareholders are disappointed that that this is now the second contract terminated, and being secured by a new company only just established in the Territory in question. This is a very unusual practice in Europe and as such our client has no alternative than to submit this claim and to consider the legal position explained.

Subject to the further measures already announced, we have to request you to pay the amount of damages of € 1,375.779.30 as well as the commercial agent compensation in the amount of € 1,701,746.63, i.e. a total amount of **€ 3,077,525.93**

by **31 March 2023** at the latest

to the business account of our client

| | |
|---|---|
| Account Holder: | Brainway Airlineservices Ges.m.b.H |
| Bank Account/IBAN: | AT52 1200 0521 0322 2444 |
| Swift/BIC: | BKAUATWW |
| Purpose: | Compensation claim dtd 9 March 2023 |

In the event of non-observance of the aforementioned payment deadline, our client expressly reserves the right to take further measures.

Sincerely Yours,

**WHSP Rechtsanwälte und Notare
Frankfurt**

Holger Strahl
Rechtsanwalt/Senior Legal Counsel