IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| UNITED AIRLINES, INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BRAINWAY AIRLINESERVICES ) <br> GES.M.B.H., ) <br> ) <br> Defendant. ) | Case No. 1:23-cv-03786 |

### UNITED AIRLINES, INC.'S MOTION TO REMAND

NOW COMES Plaintiff, UNITED AIRLINES, INC. ("United"), by and through its attorneys, WIEDNER & McAULIFFE, LTD. and respectfully requests that this Court remand this case to the Circuit Court of Cook County, Illinois County Department Chancery Division because this Court lacks jurisdiction over this matter, and states as follows:

### INTRODUCTION

This case arises out of United's Complaint for Declaratory Judgment in which United seeks purely non-monetary relief in the form of a declaration that United properly terminated the May 1, 2019 General Sales Agency Agreement ("GSAA") between United and Brainway Airlineservices Ges.m.b.H. ("Brainway") under Illinois law and a finding that Brainway is not entitled to any further compensation in connection with the termination of the GSAA. This Court should remand this case to the Circuit Court of Cook County, Illinois because Brainway has failed to meet its burden to establish that the amount in controversy exceeds $75,000 exclusive of interest. United seeks only non-monetary, declaratory relief, and the GSAA makes clear that Brainway has no legal claim for damages in connection with United's termination of the GSAA, so Brainway's claimed damages cannot be used to establish the amount in controversy. Moreover, Brainway's

1

claim for damages also fails to meet the amount in controversy requirement because: (1) it lacks competent evidence to support its claim for damages; and (2) its claimed damages are based on speculation. Therefore, Brainway has failed to meet its burden to remove this action to federal court and this action should be remanded to the Circuit Court of Cook County.

## STATEMENT OF FACTS

On May 1, 2019, United and Brainway entered into a GSAA. (Doc. 1-1 at ¶ 3). On May 1, 2020, United and Brainway entered into General Sales Agency Agreement Amendment No. 1 ("GSAA Amendment No. 1"). (Doc. 1-1 at ¶ 4). The GSAA appointed Brainway to act as United's General Cargo Sales Agent responsible for the territory described in Appendix A to the GSAA. (Doc. 1-1 at ¶ 5). The preamble of the GSAA states that the GSAA "is made and entered into this 1st day of May, 2019, in the State of Illinois, United States of America, by and between" United and Brainway. (Doc. 1-1 at ¶ 6).

Article 1.B. of the GSAA states that the GSAA was entered into with the clear understanding that the sales agency relationship is of a nonexclusive nature and that Brainway "will not rely upon any continuation of this Agreement if it makes any additional investments in connection with this Agreement, and (iii) GSAA waives any and all rights to claim any damages against United that may result from United's termination of this Agreement." (Doc. 1-1 at ¶ 7). Article 11 of the GSAA, as amended by GSAA Amendment No. 1, states that the Agreement will remain in full force and effect at United's sole discretion, until such time as United elects to terminate this Agreement by providing GSAA with ninety (90) days written notice of United's election to terminate and that United shall have the right to terminate this Agreement, for convenience and without cause, upon ninety (90) days written notice to Brainway. (Doc. 1-1 at ¶ 8). Article 13 of the GSAA provides that "NEITHER PARTY SHALL BE LIABLE TO THE

OTHER FOR DAMAGES OF ANY KIND SUSTAINED OR ARISING OUT OF THE EXPIRATION, TERMINATION OR NONRENEWAL OF THIS AGREEMENT, INCLUDING BUT NOT LIMITED TO, ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, OR OTHER DAMAGES, COMPENSATION FOR LOSS OF PROFITS OR PROSPECTIVE PROFITS, OR ON ACCOUNT OF EXPENDITURES, INVESTMENT, LOSSES OR COMMITMENTS IN CONNECTION WITH THE BUSINESS OF EITHER PARTY." (Doc. 1-1 at ¶ 9).

Article 15.A. of the GSAA states that this "Agreement shall be interpreted and construed in accordance with the laws of the State of Illinois of the United States of America" and that "[i]n the event of any dispute or controversy arising under this Agreement, [Brainway] irrevocably consents to the jurisdiction of the Courts of the State of Illinois and of any Federal Court located in such State in connection with any action or proceeding arising out of any such dispute or controversy." (Doc. 1-1 at ¶ 10).

On February 17, 2022, United issued a notice of termination to Brainway care of its parent company, ATC Aviation Services AG, terminating the GSAA pursuant to Article 11.B. of the GSAA. (Doc. 1-1 at ¶ 11). On May 27, 2022, United sent another notice of termination to Brainway pursuant to Article 11.B. of the GSAA to Brainway's address listed in in the preamble of the GSAA, under Article 10 of the GSAA. (Doc. 1-1 at ¶ 12). The May 27, 2022 Termination Letter stated that United was terminating the GSAA effective August 31, 2022, in accordance with the notice period in Article 11.B.. (Doc. 1-1 at ¶ 13).

On March 10, 2023, Brainway sent a demand letter to United demanding that United pay Brainway €3,077,525.93 by March 31, 2023. (Doc. 1-1 at ¶ 14). Despite the fact that Article 15.A. of the GSAA provides that the GSAA is to be interpreted and construed in accordance with the laws of the State of Illinois, Brainway's demand letter asserts that the May 27, 2022 Termination

Letter was ineffective because Section 21 of the Republic of Austria's Commercial Agent Act ("HVertgG") provides that contracts which have existed over a period of longer than six years may only be terminated by observing a minimum notice period of six months. Brainway asserted that United could have only terminated the agreement by November 30, 2022 at the earliest. (Doc. 1-1 at ¶ 15). Brainway further asserted in its demand letter that based on the fact that the termination should not have taken effect prior to November 30, 2022, Brainway suffered lost commission damages that it could have allegedly made in the amount of €1,375,779.30. (Doc. 1-1 at ¶ 17). Brainway also alleged in its demand letter that pursuant to Council Directive 86/653/EEC and sections 24 subs. 1 and subs. 4 HVertG, it should also be entitled to separate compensation in the amount of €1,701,746.63. (Doc. 1-1 at ¶ 18). However, in its demand letter, Brainway conceded that its actual commissions in August 2022—the month immediately before the termination of the GSAA became effective—were only €16,176.27. (Doc. 1-1 at p. 40).

On May 16, 2023, United filed a Complaint for Declaratory Judgment in the Circuit Court of Cook County, Illinois. (Doc. 1-1). United does not seek any monetary relief in its Complaint for Declaratory Judgment. Rather, United requests judgement in its favor and against Brainway and seeks the following specific declaratory relief: (1) that the Court has jurisdiction over this matter pursuant to Article 15.A. of the GSAA; (2) that United properly terminated the GSAA pursuant to Article 11.B. of the GSAA; (3) that the GSAA was terminated effective August 31, 2022; (4) that the GSAA is governed by the laws of the State of Illinois; and (5) that Brainway is not entitled to any further compensation from United in connection with the termination of the GSAA. (Doc. 1-1).

Brainway filed a Notice of Removal in connection with this matter on June 15, 2023, pursuant to 28 U.S.C. § 1441. (Doc. 1). Brainway asserts that this Court has original jurisdiction

4

over this matter under 28 U.S.C. § 1332(a), claiming the parties are diverse and the amount in controversy exceeds $75,000 exclusive of interest. (Doc. 1). Brainway alleges that the amount in controversy is €3,077,525.93 because that is the amount it is allegedly owed under the GSAA. (Doc. 1 at ¶ 9)

## LEGAL STANDARD

Under the diversity statute, "the district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. §1332(a). The burden of establishing jurisdiction in a federal forum rests upon the party seeking that forum. *Wellness Community-National v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995). This must be supported by facts rather than conclusory statements. *Linman v. Marten Transp., Ltd.* 2023 U.S. Dist. LEXS 45661(W.D. WI. March 17, 2023) (citing to *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, (2021) (explaining that the amount in controversy must meet the pleading requirements)). Further, "if allegations of jurisdictional facts are challenged by [the] adversary in any appropriate manner, [the party asserting jurisdiction] must support them by competent proof." *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936). Competent proof requires a preponderance of the evidence or "proof to a reasonable probability that jurisdiction exists." *Int'l Gateway Comm'ns, Inc. v. Comm'ns Telesystems Int'l, Inc*. 922 F. Supp. 122, 124 (N.D. Ill. 1996). Assertions of proof must do more than "point to theoretical availability of certain categories of damages." *Lewis v. Weiss*, 631 F. Supp. 2d 1063, 1066 (N.D. Ill. 2009). To make this evidence determination, courts look to the record as a whole. *Id*. at 124.

Since the burden is on the proponent of federal jurisdiction, a court does not need to bend over backwards to persuade itself that subject matter jurisdiction exists. *Priddle v. Malanis*, 2006 U.S. Dist. LEXIS 195366 at *7-8 (N.D. Ill. Sept. 14, 2006). Additionally, since lack of jurisdiction

could decree a case void and make litigation in federal court futile, the removal statute should be "strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549-50 (6th Cir. 2006) (quoting *Brown v. Francis,* 75 F.3d 860, 864-65 (3rd Cir. 1996)).

## **ARGUMENT**

Generally, the amount in controversy is determined by the face of the complaint. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 276 (1977). Courts are to look to what the plaintiff hopes to get out of the litigation. *Carroll v. Stryker*, 658 F.3d 675, 682 (7th Cir. 2011). Where a party seeks a declaratory judgment, the amount in controversy is measured by the "object of the litigation." *Hunt v. Washington State Adver. Comm'n*, 432 U.S. 333, 347 (1977). While there are different approaches to determining the amount in controversary in declaratory judgment cases, the Seventh Circuit utilizes the "either-viewpoint rule." *BEM I, LLC v. Anthropologie*, Inc., 301 F.3d 548, 553 (7th Cir. 2002). Simply put, this is what the plaintiff stands to gain or what it costs the defendant to meet plaintiff's demand. *Hannenberg v. Baker,* 2004 U.S. Dist. LEXIS 1280 at *2 (N.D. Ill. Jan. 30, 2004).

Although the Seventh Circuit follows the "viewpoint approach," this approach does not calculate every pecuniary consequence to a defendant that results from a judgment in favor of a plaintiff. *Steagall v. Becker*, 2013 U.S. Dist. LEXIS 202457, *7 (C.D. Ill. Aug. 22, 2013). The court should look only to the pecuniary result to either party which the judgment would directly produce. *McCarty v. Amoco Pipeline Co.*, 595 F.2d 389, 394-95 (7th Cir. 1979). Therefore, those pecuniary results that are speculative or are collateral, such as fines and expenses, are not considered in the amount in controversy. *Columbia Transmission Corp. v. Tarbuck*, 62 F.3d 538, 543 (3d Cir. 1995). Instead, the amount in controversy must be based on the issues that are actually

6

in dispute. *Dickal 770 L.L.C. v. PRN Corp.* 2002 U.S. Dist. LEXIS 10478 at *9 (N.D. Ill. June 6, 2002) (finding in a dispute over the entitlement to immediate possession of property, that the outcome of the suit would not affect the amount of property damages and therefore should not be considered in the amount in controversy). When the value of a controversy cannot be estimated, litigation must commence in state court. *Macken v. Jensen*, 333 F.3d 797, 799 (7th Cir. 2003).

**A. Remand is proper because United seeks only declaratory relief rather than a monetary amount that would meet the jurisdictional minimum and Brainway waived its right to claim any damages related to termination of the GSAA and therefore its claimed damages cannot be counted toward the amount in controversy.**

Brainway has failed to meet its burden of proof in this case as to the amount in controversy to establish federal court jurisdiction. At the outset, United's Complaint for Declaratory Judgment does not set forth any monetary amount in damages. Rather, the Complaint seeks only a non-monetary declaratory judgment that that the GSAA is governed by the laws of the State of Illinois and that United properly terminated the GSAA pursuant to Article 11.B. of the GSAA, such that the GSAA was terminated effective August 31, 2022, and that Brainway is not entitled to any further compensation from United in connection with the termination of the GSAA. (Doc. 1-1). Accordingly, the object of United's Complaint is declaratory relief only and the face of the Complaint fails to establish a monetary amount to meet the amount in controversy requirement. See *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 276 (1977); *Hunt v. Washington State Adver. Comm'n*, 432 U.S. 333, 347 (1977).

Further, Brainway's claimed damages cannot be used to calculate the amount in controversy because the terms of the GSAA explicitly make clear that (1) Illinois law applies to the Agreement, (2) Brainway waived its claim for damages related to the termination of the Agreement, and (3) United's termination of the agreement with ninety days advance notice was proper under the Agreement. Notably, damages that are not available to a party as a matter of law

7

are not included in the amount in controversy. *Priddle v. Malanis,* 2006 U.S. Dist. LEXIS 195366 at *7 (N.D. Ill. Sept. 14, 2006). A demand for damages is legally insufficient for jurisdictional purposes when it runs against a statutory or contractual waiver or cap on damages. *Johnson v. Wattenbarger*, 361 F.3d 991, 944 (7th Cir. 2004); *Pratt Cent. Park Ltd. Partnership v. Dames & Moore*, 60 F.3d 350, 353 (7th Cir. 1995) (noting that the court has the power to dismiss for want of jurisdiction when it determines a limitation-of-liability clause caps damages at less than the jurisdictional amount); *Alpha Med., LLC v. Roche Diagnostics Corp.*, 2015 U.S. LEXIS 139560, at *7 (Oct. 14, 2015 N.D. Ill) (finding that the jurisdictional amount was not met because the contract expressly limited actual and consequential damages). Illinois law has long held that parties are permitted to limit remedies as well as damages for breach of their agreements where no public policy bars such a provision. *Rayner Covering Systems, Inc. v. Danvers Famers Elevator Co.* 226 Ill. App. 3d 507, 508 (1992).

In this case, because the terms of the GSAA make clear that Illinois law applies to the Agreement and that Brainway specifically waived its rights to claim any damages related to the termination of the agreement, Brainway cannot establish the required amount in controversy because it cannot make any claim for lost commissions or other damages in connection with United's termination of the GSAA. *Priddle,* 2006 U.S. Dist. LEXIS 195366 at *7; *Johnson*, 361 F.3d at 944; *Pratt Cent. Park Ltd.*, 60 F.3d 350 at 353 (7th Cir. 1995); *Alpha Med., LLC*, 2015 U.S. LEXIS 139560, at *7. First, the GSAA requires the application of Illinois law. Article 15.A. of the GSAA specifically states that this Agreement shall be interpreted and construed in accordance with the laws of the State of Illinois of the United States of America and that in the event of any dispute or controversy arising under this Agreement, Brainway irrevocably consents to the jurisdiction of the Courts of the State of Illinois. (Doc. 1-1 at ¶ 10). Thus, Brainway's

8

attempt to seek damages under Austrian law is improper and invalid under the GSAA.

Additionally, Brainway waived its rights to claim damages related to the termination of the GSAA. Article 1.B. of the GSAA states that the GSAA was entered into with the clear understanding that the sales agency relationship is of a nonexclusive nature and that Brainway "will not rely upon any continuation of this Agreement if it makes any additional investments in connection with this Agreement, and (iii) GSAA waives any and all rights to claim any damages against United that may result from United's termination of this Agreement." (Doc. 1-1 at ¶ 7). Moreover, Article 13 of the GSAA provides that neither party shall be liable to the other for damages of any kind sustained or arising out of the termination of the Agreement, including but not limited to, any special, incidental, consequential, or other damages, compensation for loss of profits or prospective profits. (Doc. 1-1 at ¶ 9). Accordingly, none of Brainway's claimed lost commissions or other damages in its demand letter can be counted towards the amount in controversy based on Brainway's explicit agreement to waive these damages in the GSAA. *Priddle,* 2006 U.S. Dist. LEXIS 195366 at *7; *Johnson*, 361 F.3d at 944; *Pratt Cent. Park Ltd.*, 60 F.3d 350 at 353 (7th Cir. 1995); *Alpha Med., LLC*, 2015 U.S. LEXIS 139560, at *7.

The GSAA also makes clear that United provided proper advanced notice of termination because the GSAA allows United to terminate the Agreement with ninety days advance notice. Article 11 of the GSAA, as amended by GSAA Amendment No. 1, states that the Agreement will remain in full force and effect at United's sole discretion, until such time as United elects to terminate this Agreement by providing GSAA with ninety (90) days written notice of United's election to terminate and that United shall have the right to terminate this Agreement, for convenience and without cause, upon ninety (90) days written notice to Brainway. (Doc. 1-1 at ¶ 8). United sent a notice of termination on May 27, 2022, to Brainway pursuant to Article 11.B. of

the GSAA to Brainway's address listed in in the preamble of the GSAA, under Article 10 of the GSAA. (Doc. 1-1 at ¶ 12). The May 27, 2022 Termination Letter stated that United was terminating the GSAA effective August 31, 2022, in accordance with the notice period in Article 11.B. (Doc. 1-1 at ¶ 13). Therefore, there can be no question that United complied with the notice of termination provision of the GSAA.

Based on the foregoing terms of the GSAA, and specifically Brainway's waiver of any and all damages related to termination of the Agreement, Brainway cannot make any claim of damages here that can be counted towards the amount in controversy jurisdictional requirement. *Priddle,* 2006 U.S. Dist. LEXIS 195366 at *7 (damages that are not available to a party as a matter of law are not included in the amount in controversy); *Steagall*, 2013 U.S. Dist. LEXIS 202457 at *7-8 (explaining that lost business revenue concerning the disputed contract would not directly and immediately result if requested declaratory relief was granted and thus the claims were inchoate and impossible to determine). See also *Priddle,* 2006 U.S. Dist. LEXIS 195366 at *7; *Johnson*, 361 F.3d at 944; *Pratt Cent. Park Ltd.*, 60 F.3d 350 at 353 (7th Cir. 1995); *Alpha Med., LLC*, 2015 U.S. LEXIS 139560, at *7. Accordingly, because United seeks only declaratory relief and Brainway knowingly and explicitly waived any claim for damages related to the termination of the GSAA, Brainway's alleged lost commissions cannot be counted towards the jurisdictional amount in controversy and therefore remand is proper.

**B. Remand is proper because Brainway failed to meet its burden of establishing the amount in controversy with reasonable proof.**

1. <u>Brainway has not presented competent evidence to meet its burden.</u>

Remand is also appropriate because Brainway failed to provide adequate proof of the amount in controversy. Conclusory statements are not enough to meet the amount in controversy. *Linman v. Marten Transp., Ltd.* 2023 U.S. Dist. LEXS 45661 (W.D. Wis. March 17, 2023) The

10

burden is on the proponent of federal jurisdiction to prove disputed jurisdictional facts by a preponderance of the evidence. *Meridian Sec. Ins. Co v. Sadowski*, 441 F.3d 536, 542 (7th Cir. 2006). Estimates do not suffice as proper evidence. *Hannenberg,* 2004 U.S. Dist. LEXIS 1280 at *5 (finding that the amount in controversy was not met because the value in obtaining a trust instrument was too difficult to estimate and the burden of ascertaining the amount was not on the court). Though Brainway's assertion of damages is invalid under the GSAA, it has also offered no concrete evidence of lost sales or commissions with reasonable certainty or presented signed affidavits as to specific damages that were incurred to meet the jurisdictional minimum. Instead, Brainway has merely relied on its demand letter without providing any actual evidence as to lost sales or orders. This is insufficient proof to establish the amount in controversy by a preponderance of the evidence and all doubts must be construed in favor of remand. *Doe v. Alled-Signal Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (citing *Jones v. General Tire and Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1982)). Accordingly, this case should be remanded to the Circuit Court of Cook County based on Brainway's lack of proof as to damages.

    2. <u>Brainway's commission calculations are speculative and cannot be proven.</u>

Additionally, although Brainway is not entitled to claim any lost commissions based on its agreement to waive its right to any such damages in the GSAA, assuming *arguendo* that Brainway could do so, Brainway relies on impermissible speculation and lack of certainty in calculating the amount in controversy. Brainway points to what it considers its lost commissions from August 31, 2022, to November 2022 as the partial basis for its claim as to the amount in controversy. However, Brainway's claim as to future commissions in the three months post-termination is based on impermissible speculation. In *Healy v. CTP*, the court determined that an employee could not claim that her employer owed her commissions on sales she would have commissioned had she stayed

employed because those damages were inherently speculative. *Healy v. CTP*, 1994 U.S. Dist. LEXIS 13662, at *9 (N.D. Ill. Sept. 22, 1994). The court described damages as impermissibly speculative when "uncertainty exists as to the fact of damages." *Id*. at 9. In this case, similar to *Healy,* Brainway's claim of lost future commissions is impermissibly speculative. Brainway did not provide any evidence of future commissions with reasonable certainty and any such claim would be entirely speculative.[1] Therefore, Brainway cannot meet the jurisdictional minimum and remand is appropriate.

## CONCLUSION

For the foregoing reasons, Brainway has failed to meet its burden to prove the amount in controversy required under 28 U.S.C. §1332(a). Accordingly, United respectfully requests that this Court remand this case to the Circuit Court of Cook County, Illinois.

Respectfully submitted,

WIEDNER & McAULIFFE, LTD.

/s/ Richard J. Leamy, Jr.
Attorney for United Airlines, Inc.

---

[1] It should also be noted that, even assuming, *arguendo*, Brainway's prior commissions were allowed to be used to estimate the amount in controversy (which they are not based on the fact they were waived in the GSAA), the most recent month of commissions prior to the termination should be used and results in damages less than the jurisdictional minimum. Notably, Brainway's demand letter admitted that in August of 2022—the month just prior to the termination—Brainway's monthly commissions were approximately only €16,000.00, or $17,611.34 U.S. Dollars. Applying that amount to the three-month window from September 2022 to November 2022, which is the subject of the litigation, would be the most reasonable month of commissions to use in calculating the amount in controversy since that month is closest in proximity of time to the termination as well as economic conditions. Using this amount to calculate the amount of lost commissions for the three months at issue, still results in total damages less than $75,000 ($17,611.34 x 3 months = $52,834.02).

12

Richard J. Leamy, Jr. - # 3122843
J. Jason Coggins - # - 6242695
WIEDNER & McAULIFFE, LTD.
One North Franklin Street, Suite 1900
Chicago, Illinois 60606
Telephone: 312-855-1105
Facsimile: 312-855-1792
rjleamy@wmlaw.com
jjcoggins@wmlaw.com

## CERTIFICATE OF SERVICE

I, Richard J. Leamy, Jr., an attorney, certify that I caused to be electronically filed the foregoing Motion to Remand on behalf of United Airlines, Inc.'s with the Clerk of the Circuit Court using the CM/ECF system that will send notification of such filing to the following:

Dylan P. Grady, BROWN HAY & STEPHENS, 205 S. 5th Street, Suite 1000, P.O. Box 2459 Springfield, IL 62701 - Email: dgrady@bhslaw.com
**and**
Daniel A. Glass, ECKERT SEAMANS CHERIN &MELLOTT, LLC, 1717 Pennsylvania, Avenue, N.W., Suite 1200, Washington, D.C. 20006 - Email: dglass@eckertseamans.com

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct.

/s/ Richard J. Leamy, Jr.
Attorney for Plaintiff – United Airlines, Inc.